1   XAVIER BECERRA
    Attorney General of California
2   JENNIFER M. KIM
    Supervising Deputy Attorney General
3   MALINDA LEE, SBN 263806
    MARY R. CONKLIN, SBN 266173
4   Deputy Attorneys General
     300 South Spring Street, Suite 1702
5    Los Angeles, CA  90013
     Telephone:  (213) 269-6223
6    Fax:  (213) 897-2805
     E-mail:  Malinda.Lee@doj.ca.gov
7   *Attorneys for Defendants*

8
                IN THE UNITED STATES DISTRICT COURT
9
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
10
                        WESTERN DIVISION
11

12

| | |
|---|---|
| 13  **EMPLOYEE HEALTH SYSTEMS MEDICAL GROUP, INC., a** | 2:18-cv-01166-GW(JPRx) |
| 14  **California Corporation,** | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| 15                            Plaintiff, | |
| 16        **v.** | **[Fed. R. Civ. P. 12(b)(1) and 12(b)(6)]** |
| 17  **DEPARTMENT OF MANAGED HEALTH CARE; SHELLEY** | [Filed concurrently with Defendants' Reply to Plaintiff's Evidentiary |
| 18  **ROUILLARD, an individual; and DOES I THROUGH 50, inclusive,** | Objections; Supplemental Declaration of Julie Lowrie] |
| 19                          Defendants. | |
| 20 | Date:        May 31, 2018 |
| 21 | Time:        8:30 a.m. Courtroom:   9D |
| 22 | Judge:       Hon. George H. Wu Trial Date:   TBD Action Filed: 2/12/2018 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction...................................................................................................1

Argument ......................................................................................................2

I.    The Opposition Fails to Refute Plaintiff's Lack of Standing ...............2

    A.    Plaintiff Fails to Show that Its Alleged Injury Is Redressable ............................................................................... 2

    B.    Plaintiff Fails to Show Its Alleged Injury Is Traceable to Defendants ................................................................. 5

II.   The Opposition Fails to Refute Defendants' Sovereign Immunity.................................................................................... 5

    A.    The Department Is an Arm of the State................................... 7

        1.    The State Treasury Pays Judgments Against DMHC ................................................................... 7

        2.    The Department Performs a Central Government Function .................................................... 9

        3.    The Department Can Sue and Be Sued ........................... 9

        4.    The Department May Possess Property but Not "Take" Property............................................... 9

        5.    The Department's Corporate Status Is that of an Agent of the State of California ................................ 10

    B.    *Ex Parte Young* Does Not Provide an Exception to Defendants' Sovereign Immunity............................................ 11

        1.    Plaintiff Fails to Show an Ongoing Violation of Federal Law in Support of Its *Ex Parte Young* Argument............................................................... 11

        2.    Plaintiff Fails to Show the Narrow Circumstances in Which the *Ex Parte Young* Exception Applies .......... 12

III.  The Director Is Entitled to Qualified Immunity ............................... 13

    A.    Plaintiff Fails to Address the Defects in Its Due Process Allegation to Support a Section 1983 Claim .......................... 15

    B.    Plaintiff Fails to Address the Defects in Its Race Discrimination Allegation to Support a Section 1983 Claim........................................................................... 15

    C.    Plaintiff's Attempt to Incorporate the Eighth Amendment into Its Section 1983 Argument Fails ...................... 16

IV.   Plaintiff Fails to Overcome the Mootness Bar to Its Claims ............. 17

V.    Plaintiff's Constitutional Claims Fail ............................................. 18

    A.    Plaintiff Fails to State a Claim Under the Fifth Amendment....................................................................... 18

    B.    Plaintiff Fails to State a Claim Under the Eighth Amendment....................................................................... 18

i

1

2

## TABLE OF CONTENTS
### (continued)

Page

3       1.    Neither the Ninth Circuit nor the Supreme Court Has Expressly Held that the Excessive Fines Clause Is Incorporated Under the Due Process Clause of the Fourteenth Amendment .............................................. 19

4

5       2.    Defendant's Order Is Not a Punishment ........................ 21

6     C.  Plaintiff Fails to State a Claim Under the Fourteenth Amendment ..................................................................... 22

7   VI.  Plaintiff's Silence on Defendants' Evidence that EHS and SynerMed Are Essentially the Same Entity Is Tantamount to an Admission ............................................................................ 22

8

9   Conclusion ............................................................................................ 23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Allen v. Wright*
  468 U.S. 737 (1984) ........................................................................... 5

*Anderson v. Creighton*
  483 U.S. 635 (1987) ..................................................................... 13, 14

*Austin v. United States*
  509 U.S. 602 (1993) ..................................................................... 18, 21

*Barnum Timber Co. v. U.S. E.P.A.*
  633 F.3d 894 (9th Cir. 2011) ............................................................. 5

*Belanger v. Madera Unified School Dist.*
  963 F.2d 248 (9th Cir. 1992) .......................................................... 7, 9

*Brown v. Board of Education*
  347 U.S. 483 (1954) ......................................................................... 15

*Darensburg v. Metro. Transp. Comm'n*
  636 F.3d 511 (9th Cir. 2011) ........................................................... 16

*Dusenbery v. United States*
  534 U.S. 161 (2002) ......................................................................... 18

*Eaglesmith v. Ward*
  73 F.3d 857 (9th Cir. 1995) ............................................................ 7, 9

*Edelman v. Jordan*
  415 U.S. 651 (1974) ........................................................................... 6

*Enquist v. Oregon Department of Agriculture*
  478 F.3d 985 (9th Cir. 2007) ....................................................... 19, 20

*Ford Motor Co. v. Dep't of Treasury of State of Indiana*
  323 U.S. 459 (1945) ......................................................................... 13

*Garcia v. Lawn*
  805 F.2d 1400 (9th Cir. 1986) ......................................................... 17

iii

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3
4
*Green v. Mansour*
    474 U.S. 64 (1985) .................................................................. 6

5
6
*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) ............................................................. 14

7
8
*Idaho v. Coeur d'Alene Tribe of Idaho*
    521 U.S. 261 (1997) ..................................................... 11, 12, 13

9
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .............................................................. 3, 4

10
11
*McDonald v. City of Chicago, Illinois*
    561 U.S. 742. (2010) ............................................................. 20

12
13
*Nielsen v. Unum Life Ins. Co. of Am.*
    58 F. Supp. 3d 1152 (W.D. Wash. 2014) ............................... 5, 22

14
15
*Ocean Advocates v. U.S. Army Corps of Eng'rs*
    402 F.3d 846 (9th Cir. 2014) .................................................. 5

16
17
*Pennhurst State School & Hosp. v. Halderman*
    465 U.S. 89 (1984) .................................................................. 6

18
19
*Sato v. Orange County Department of Education*
    861 F.3d 923 (9th Cir. 2017) ............................................... 10

20
21
*Shell Offshore, Inc. v. Greenpeace, Inc.*
    709 F.3d 1281 (9th Cir. 2013) ............................................. 5, 22

22
23
*Skyline Wesleyan Church v. Cal. Dep't. of Managed Health Care*
    No. 3:16-cv-00501-H-DHB, 2016 U.S. Dist. LEXIS 181701 (S.D.
    Cal. June 20, 2016) ................................................................ 3

24
25
26
*Skyline Wesleyan Church v. Cal. Dep't. of Managed Health Care*
    No. 3:16-cv-0501-CAB-DHB, 2018 WL 1245221 (S.D. Cal. Mar.
    9, 2018) ................................................................................. 3

27
*Wright v. Riveland*
    219 F.3d 905 (9th Cir. 2000) ............................................... 20

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Ex Parte Young*
209 U.S. 123 (1908) ................................................................................ 11, 12

**STATUTES**

42 U.S.C. § 1983 ........................................................................ 13, 15, 16, 17

Cal. Gov't Code § 811.2 (West 2018) .................................................... 9, 10

Cal. Gov't Code § 940.6 (West 2018) ........................................................ 7

Cal. Gov't Code § 945 (West 2018) ............................................................ 9

Cal Gov't Code § 965.2(a) (West 2018) ...................................................... 7

Cal. Gov't Code § 1341.8 (West 2018) ....................................................... 9

Cal. Gov't Code § 11135 (West 2018) .................................................... 8, 16

Cal. Gov't Code § 11150 (West 2018) ......................................................... 9

Cal. Health & Safety Code § 1340 (West 2018) ................................*passim*

Cal. Health & Safety Code § 1341(a) (West 2018) ..........................7, 9, 10, 11

Cal. Health & Safety Code § 1341.2 (West 2018) ..................................... 11

Cal. Health & Safety Code § 1341.4(a) (West 2018) .................................. 8

Cal. Health & Safety Code § 1341.12 (West 2018) .................................... 10

Cal. Health & Safety Code § 1341.45(a)-(b) (West 2018) ........................... 8

Cal. Health & Safety Code § 1341.45(c) (West 2018) ................................. 8

Cal. Health & Safety Code §§ 1356(a)-(d) (West 2018) .............................. 8

Cal. Health & Safety Code § 1371 (West 2018) .......................................... 4

Cal. Health & Safety Code §§ 1393(a)-(b) (West 2018) ............................ 10

Cal. Health & Safety Code § 1393(c) (West 2018) .................................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

Fifth Amendment ............................................................................. 18

Seventh Amendment ....................................................................... 21

Eighth Amendment ..................................................................... *passim*

Eleventh Amendment ................................................................. *passim*

Fourteenth Amendment .............................................................. *passim*

Bill of Rights .................................................................................. 21

**COURT RULES**

Fed. R. Civ. P. 15 ........................................................................... 17

Fed. R. Evid. 801(d)(2) ................................................................. 22

## INTRODUCTION

Plaintiff Employee Health Systems Medical Group, Inc.'s (EHS or Plaintiff) Opposition to Defendants' Motion to Dismiss (Opposition) fails to refute the Motion's evidence demonstrating EHS's lack of standing, the Department of Managed Health Care's (DMHC or Department) and its Director's immunity, mootness, and the insufficiency of EHS's constitutional allegations.

The Complaint challenges Defendants' December 2017 order to nine health plans (Order) directing them to terminate contracts with Plaintiff. The Order was issued after investigation revealed (1) that SynerMed, EHS's management company, engaged in "egregious misconduct," such as fabricating records and denying medical services without justification (Compl. Ex. B ¶ 16, ECF No. 1-2); and (2) that Plaintiff and SynerMed were essentially the same entity, because they shared an almost identical board of directors, and both organizations listed the same physical address on the Secretary of State registry.

In response to Defendants' Motion challenging EHS's standing, the Opposition devotes just six sentences to refute lack of redressability. The conclusory contention that rescinding the Order will cause Anthem Blue Cross, Aetna, Cigna, and the remaining six health plans (Health Plans) to voluntarily terminate their current contracts and reengage EHS's services, fails to demonstrate redressability to establish standing. The Health Plans are non-parties who can contract with independent physician associations (IPAs), like Plaintiff, or forgo using an IPA altogether. Plaintiff failed to demonstrate how or why the Health Plans would reemploy EHS's services even if this Court reversed the Order. This is particularly so given that five of the Health Plans terminated their contracts with Plaintiff *prior* to issuance of the Order.

The Opposition also fails to refute the mootness of its requested relief because EHS's argument that language in the Order stating it "shall continue in full force and effect until further Order by the Director" does not overcome the fact that the

Order had been fully complied with by its deadline of February 1, 2018.  Neither affirmance nor reversal of the Order would have any practical effect because no outcome can return Plaintiff to *status quo ante*, which is the redress Plaintiff seeks.

The Opposition attempts to circumvent DMHC's Eleventh Amendment immunity by arguing DMHC is not an arm of the State, and seeks to apply inapplicable exceptions.  Numerous statutes unequivocally establish DMHC is a department of the State of California entitled to sovereign immunity, without exception.

Similarly, for the reasons explained below, the Opposition fails to refute the Director's entitlement to qualified immunity, and Defendants' challenge to EHS's remaining claims.  Thus, Defendants respectfully request that the Court grant their Motion to Dismiss with prejudice.

## ARGUMENT

## I.   THE OPPOSITION FAILS TO REFUTE PLAINTIFF'S LACK OF STANDING

### A.   Plaintiff Fails to Show that Its Alleged Injury Is Redressable

The Opposition fails to address how a favorable ruling will redress the alleged harm, which is required for standing.  Instead, Plaintiff cites to inapplicable cases, then summarily concludes that rescinding DMHC's Order will cause the Health Plans to "resume their business relationships with EHS" with no explanation whatsoever.  Opp'n 13, ECF No. 17.  EHS's argument is woefully deficient.  First, EHS fails to show how the Health Plans could undertake such an action when non-party California Department of Health Care Services (Cal DHCS) had ordered them to terminate their contracts with EHS pursuant to corrective action plans.  *See* Lowrie Decl. ¶ 18, ECF No. 13-1.  Second, even if Cal DHCS's mandate was not an issue, Plaintiff failed to explain why the Health Plans would voluntarily terminate their current IPA contracts and re-enter into contracts with EHS.  At least one health plan *explicitly* stated that its termination of EHS's contract was based on

1   reasons "separate and distinct" from DMHC's Order.  *Id.*, Ex. F at 96.  Moreover,

2   assuming the Order is rescinded, the Health Plans may freely select any IPA other

3   than EHS, or no IPA at all.  Therefore, any Court ruling to rescind the Order would

4   not result in the relief requested by Plaintiff.

5       Plaintiff's sole authority on the issue of redressability, *Skyline Wesleyan*

6   *Church v. Cal. Dep't. of Managed Health Care,* No. 3:16-cv-00501-H-DHB, 2016

7   U.S. Dist. LEXIS 181701 (S.D. Cal. June 20, 2016) (*Skyline I*), actually supports a

8   finding that Plaintiff lacks standing because EHS cannot demonstrate redressability.

9   In *Skyline I*, plaintiff-church challenged defendant-agency's requirement that health

10  plans include coverage for abortion services.  *Skyline I,* 2016 U.S. Dist. LEXIS

11  181701, at *2-4.  There, health plans had previously offered consumers options that

12  omitted abortion coverage, but defendant-agency's enforcement of state law

13  rendered such plans legally impermissible.  Thus, plaintiff-church sued defendant-

14  agency because it could no longer offer its employees plans excluding abortion

15  coverage.  *Id.*  While the court initially denied in part defendant-agency's motion to

16  dismiss, the same court subsequently ruled that plaintiff-church lacked standing for

17  failure to demonstrate redressability.  "Because redressability depends upon the

18  actions of a health care plan in response to the Court's judgment and such actions

19  are not within the control of the Court, Plaintiff lacks standing to pursue its claims."

20  *Skyline Wesleyan Church v. Cal. Dep't. of Managed Health Care*, No. 3:16-cv-

21  0501-CAB-DHB, 2018 WL 1245221, at *7 (S.D. Cal. Mar. 9, 2018) (*Skyline II*);

22  *appeal docketed,* No. 18-55451 (9th Cir. April 9, 2018).

23      Here, the facts are far weaker than in *Skyline I* and *II,* because the redress EHS

24  seeks hinges on *multiple* issues, each within the discretion of third party Health

25  Plans.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562 (1992) (standing is

26  "substantially more difficult to establish" when "one or more of the essential

27  elements of standing depends on the unfettered choices made by independent actors

28  not before the courts and whose exercise of broad and legitimate discretion the

1   courts cannot presume either to control or to predict") (citations omitted).

2   Reversing the Order would not restore EHS contracts because the Health Plans

3   have retained new service providers.  The requested relief sought by EHS would

4   require that each of the Health Plans: (1) determine that EHS should serve as its

5   IPA rather than its current IPA; (2) terminate the existing contract with its current

6   IPA; (3) re-engage EHS as its IPA and risk liability for non-compliance by EHS

7   because, under the Knox-Keene Act, health plans cannot waive liability by

8   delegating its operations (Cal. Health & Safety Code § 1371 (West 2018); and (4)

9   for at least five Health Plans, re-engage EHS even though they severed

10  relationships with EHS prior to the Order and, in at least one instance, did so for

11  reasons totally separate and distinct from the Order (*see* Lowrie Decl. ¶¶ 17-18, Ex.

12  F at 96, ECF No. 13-1).  In other words, Plaintiff requires the Court to pile

13  conjecture on conjecture, forcing it to assume that third-party Health Plans will

14  decide to take the aforementioned steps in order to retain EHS as their IPA.  *Lujan*

15  *v. Defenders of Wildlife*, 504 U.S. at 571 (court held no standing where "it is

16  entirely conjectural whether the [third-party] activity that affects [plaintiff] will be

17  altered or affected by the [defendant] activity they seek to achieve).

18       Plaintiff has alleged no facts, other than its conclusory statement, to show the

19  Health Plans' choices would be exercised in a way favorable to EHS on each of the

20  aforementioned issues.  *Lujan v. Defenders of Wildlife,* 504 U.S. at 562 ("it

21  becomes the burden of the plaintiff to adduce facts showing that those choices have

22  been or will be made in such manner as to produce causation and permit

23  redressability of injury").  Because the Opposition offers not a single fact as to how

24  or why the Health Plans would voluntarily re-engage EHS's services, EHS has

25  failed to meet its burden to show the redressability requirement for standing.  Thus,

26  the Complaint should be dismissed with prejudice.

27  / / /

28  / / /

4

### B.    Plaintiff Fails to Show Its Alleged Injury Is Traceable to Defendants

Despite Plaintiff's contention that causation is not required for standing (*see* Opp'n 10, ECF No. 17), the law clearly requires Plaintiff to demonstrate the "causal connection" between its alleged injury and Defendants' actions.  In fact, all of the cases cited in the Opposition acknowledge that causation is a requirement to establish standing under Article III.  *See, e.g., Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 898-99 (9th Cir. 2011) (Plaintiff satisfied its "burden to demonstrate the causal connection element of Article III standing at the pleading stage" by alleging "specific facts plausibly explaining causality"); *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2014) (finding the causal link between the new platform and increased traffic is sufficient to support standing). For all the reasons stated in Defendants' moving papers, here, "[t]he links in the chain of causation between the challenged conduct and the asserted injury are far too weak" and fail to support Plaintiff's assertion of standing.  *Allen v. Wright*, 468 U.S. 737, 759 (1984).

## II.    THE OPPOSITION FAILS TO REFUTE DEFENDANTS' SOVEREIGN IMMUNITY

DMHC asserted its sovereign immunity as to Plaintiff's first through fifth claims for relief.  Mot. 15, 18, 20, 21, ECF No. 13.  The Opposition is silent as to Defendants' assertion of sovereign immunity to the first and fifth claims for relief, which Defendants objected to because they are absolutely immune from suits in federal court alleging state law violations.  Thus, Plaintiff waived any objection to the dismissal of the first and fifth claims for relief based on Eleventh Amendment immunity.  *Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281, 1290 (9th Cir. 2013) (finding no error in determination that silence in the face of contrary evidence can be accorded weight that the evidence was unrefuted); *Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1161 (W.D. Wash. 2014) (Court

1   construes plaintiff's failure to oppose motion to dismiss Count II as an admission

2   that the motion has merit).

3       Plaintiff alleges that Eleventh Amendment immunity only applies to suits for

4   money damages, thus, it is inapplicable to the fourth claim for declaratory relief.

5   Opp'n 19-20, ECF No. 17.  However, the Supreme Court has held that sovereign

6   immunity bars suits alleging violations of state law against DMHC, regardless of

7   the relief sought.  *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121

8   (1984).  Additionally, claims for declaratory relief relating to state officials' past

9   violations of federal law are barred by the Eleventh Amendment, or where the

10  declaratory judgment would have the same effect as an award of damages by the

11  federal court are prohibited by the Eleventh Amendment.  The Supreme Court has

12  held that "declaratory relief is not available when the result would be a partial 'end

13  run' around [the] decision in *Edelman v.* Jordan," which bars relief that is

14  retrospective in nature.  *Green v. Mansour,* 474 U.S. 64, 73 (1985) (citing *Edelman*

15  *v. Jordan*, 415 U.S. 651 (1974)).

16      Plaintiff's allegations in its claim for declaratory relief are plainly

17  retrospective in nature and seek money damages.  See Compl. ¶ 52 ("Plaintiff has

18  *incurred and suffered damages*"), ¶ 53 ("the *damages* alleged in [the] Complaint

19  *were* a proximate result of the wrongful conduct of Defendants"), ¶ 54 ("If Plaintiff

20  has *sustained damages* . . . Defendants are totally liable"), ¶ 55 (alleging that an

21  actual controversy exists as to "the alleged *damages suffered* by Plaintiff"), ECF

22  No. 1 (emphasis added).  From the face of the Complaint, "the impropriety of the

23  issuance of declaratory judgement in this case" is apparent.  *Green v. Mansour*, 474

24  U.S. at 73.

25      Accordingly, any "end run" around Defendants' Eleventh Amendment

26  immunity should not be permitted.  Therefore, DMHC and the Director in her

27  official capacity are entitled to immunity from suit.

28

### A.   The Department Is an Arm of the State

Plaintiff next alleges that sovereign immunity does not apply to the second and fifth claims for relief because DMHC is a "self-funding agency," and, thus, not an arm of the State.  Opp'n 21, ECF No. 17.  The five-part test used by the Ninth Circuit to determine whether a party is a state agency for purposes of Eleventh Amendment immunity consists of the following:  (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued in its own name; (4) whether the entity has the authority to hold property in its own name or only in the name of the state; and (5) whether the entity has the corporate status of a state agency.  *See Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995).

### 1.   The State Treasury Pays Judgments Against DMHC

The first factor – whether a money judgment against the Department would be satisfied out of state funds – is the most important factor in this analysis, and is satisfied here.  *Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 251 (9th Cir. 1992).  Plaintiff's assertion that DMHC is a "self-funded agency," and money judgment against it would "not be satisfied out of state funds" contradicts the plain language of many statutes.  Opp'n 17, ECF No. 17

Under California law, when the State has a judgment against it, the Controller draws a warrant for the payment of the judgment after the Director of Finance certifies that a sufficient appropriation for that payment exists.  Cal. Gov't Code § 965.2(a) (West 2018).  For the purposes of this provision, "State" includes departments of the state government in California.  *Id.* at § 940.6.  DMHC is a department of the state government of California.  Cal. Health & Safety Code § 1341(a) (West 2018).  Thus, judgments against DMHC would be paid by warrants drawn upon the State Treasury by the Controller, provided that the Director of Finance certified that a sufficient appropriation exists for that payment.  Cal Gov't Code § 965.2(a) (West 2018).

DMHC is funded by the State pursuant to statute: "[i]n order to effectively support the Department of Managed Health Care in the administration of [the Knox-Keene Act], there is hereby established *in the State Treasury*, the Managed Care Fund."  Cal. Health & Safety Code § 1341.4(a) (West 2018) (emphasis added).  Thus, California law clearly provides that the funds to operate the Department are made from the Managed Care Fund, a part of the State Treasury. *Id*.

The Managed Care Fund is funded primarily by reimbursements (license processing fees, fees for medical surveys and financial examinations, etc.) and by annual assessments paid by the Department's licensees.  Cal. Health & Safety Code §§ 1356(a)-(d) (West 2018).  Administrative penalties levied against the Department's licensees are paid into the Managed Care Administrative Penalties Fund, another fund in the State Treasury.  *Id.* at § 1341.45(a)-(b).  Monies paid into the Managed Care Administrative Penalties Fund are not used to pay for DMHC's operations, but instead are used to fund medical school scholarships and for other purposes.  *Id.* at § 1341.45(c).

While the Opposition contends that the Department is "self-funded," Plaintiff takes a different (and correct) position in its Complaint that Defendants are "[a] *state-funded department and employee respectively*."  Compl. ¶ 60, ECF No. 1 (emphasis added).  Plaintiff's contradictory positions are self-serving: on the one hand, DMHC must be funded by the State for purposes of establishing Plaintiff's claim under California Government Code section 11135, and on the other hand, DMHC cannot be funded by the State in order for Plaintiff to overcome DMHC's Eleventh Amendment immunity.  *Compare* Opp'n 17, ECF No. 17 *with* Compl. ¶ 60, ECF No. 1.

Thus, Plaintiff's assertion that DMHC's budget is derived from the collection of administrative penalties, fees, and assessments that are not part of the state treasury fails.

### 2.     The Department Performs a Central Government Function

The public policy of California is to vest in the Governor the responsibility for the civil administration of the laws of the State.  Cal. Gov't Code §11150 (West 2018).  To aid the Governor in the execution and administration of the laws, the Legislature has divided the executive and administrative work into departments as provided by law.  *Id*.  DMHC is a department within the state government charged with the execution of California law related to health plans and the health plan industry.  Cal. Health & Safety Code §1341(a) (West 2018).  In addition, the Director of DMHC has all the powers of a head of a department.  Cal. Gov't Code § 1341.8 (West 2018).

Thus, DMHC performs central government functions and this factor indicates that DMHC is an arm of the State for Eleventh Amendment purposes.

### 3.     The Department Can Sue and Be Sued

There is no statute specifically authorizing the Department to sue or be sued in its own name.  But as a public entity, DMHC may sue and be sued.  Cal. Gov't Code § 945 (West 2018).  Under California law, the definition of a public entity includes the departments of the State government.  *Id*. § 811.2.  DMHC, as a department of the State government, is a public entity.  *Id*.; Cal. Health & Safety Code § 1341(a) (West 2018).

Because DMHC may sue and be sued, this factor militates against a finding that DMHC is a state agency.  However, this factor "is not entitled to as much weight" and courts have found that a government entity is a state agency for Eleventh Amendment purposes notwithstanding this divergent factor.  *Eaglesmith v. Ward,* 73 F.3d at 860; *Belanger v. Madera Unified School Dist.* 963 F.2d at 254.

### 4.     The Department May Possess Property but Not "Take" Property

DMHC is authorized by statute to possess property, but cannot "take" property.  Under California law, DMHC is authorized to possess property:

> The department shall have possession and control of all records, papers, offices, equipment, supplies, moneys, funds, appropriations, licenses, permits, agreements, contracts, claims, judgments, land, *and other property, real or personal*, connected with the administration of, or held for the benefit or use of, the Department of Corporations for the performance of the functions transferred to the department by Section 1341.9.

Cal. Health & Safety Code §1341.12 (West 2018) (emphasis added).

However, in the regulatory context, DMHC has no power to "take" property in its own name. Instead, California law allows a superior court, upon application demonstrating violations of the applicable law, to vest title to the assets of a licensee in the Director in his or her official capacity, and for the Director to take possession of all of the assets of the licensee to enjoin the owners of that property from transacting business or disposing of the property until further order of the Court. Cal. Health & Safety Code §§ 1393(a)-(b) (West 2018). The Director may appoint a conservator who then takes possession of the assets of the licensee and operates the business. *Id.* at § 1393(c).

Thus, for purposes of Eleventh Amendment analysis, this factor is a "close question," and is entitled to "little weight." *Sato v. Orange County Department of Education,* 861 F.3d 923, 934 (9th Cir. 2017).

### 5.   The Department's Corporate Status Is that of an Agent of the State of California

DMHC's corporate status as a public entity shows that DMHC is an agency of the state government. By statute, DMHC is a department of the state government within the Health and Human Services Agency. Cal. Health & Safety Code § 1341(a) (West 2018); Cal. Gov't Code § 811.2 (West 2018). Not only does the Department's budget come from the State Treasury, DMHC is subject to the oversight imposed on all state agencies within the State of California. The

1   Governor appoints the Director of DMHC and all employees of the Director must

2   "take and subscribe to the constitutional oath of office and file it in the office of the

3   Secretary of State."  Cal. Health & Safety Code § 1341.2 (West 2018).  Thus,

4   DMHC has the corporate status of an agent of the State of California charged with

5   "the execution of the laws of this state relating to health care service plans . . . to

6   ensure that health care service plans provide enrollees with access to quality health

7   care services and protect and promote the interests of enrollees."  *Id.* at §1341(a).

8       Based on the foregoing, the balance of the five factors establish that DMHC is

9   an arm of the State, and is therefore entitled to Eleventh Amendment immunity.

10      **B.   *Ex Parte Young* Does Not Provide an Exception to Defendants'**
        **Sovereign Immunity**

11

12      None of the factors that would satisfy application of the *Ex Parte Young*

13   exception to Defendants' sovereign immunity exist here.  Plaintiff alleges that *Ex*

14   *Parte Young* precludes the application of sovereign immunity to a suit seeking

15   injunctive relief against a purported ongoing violation of the Constitution.  *Ex Parte*

16   *Young*, 209 U.S. 123, 159-60 (1908); Opp'n 15-16, ECF No. 17.  Plaintiff's

17   contention is misplaced.  Federal courts post-*Young* have consistently determined

18   that the *Young* doctrine applies in only two circumstances: (1) when there is no

19   state forum available to vindicate federal interests; and (2) when the case calls for

20   interpretation of federal law.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261,

21   270, 274 (1997).  Plaintiff fails to identify how this case fits into either of these

22   categories (indeed Plaintiff has filed suit against Defendants in state court) and a

23   basic review of the contentions in Plaintiff's Complaint demonstrates that neither

24   circumstance is implicated here.

25      **1.   Plaintiff Fails to Show an Ongoing Violation of Federal**
        **Law in Support of Its *Ex Parte Young* Argument**

26

27      Plaintiff's attempt to invoke the *Ex Parte Young* exception fails because

28   Plaintiff cannot show any ongoing violation of the Constitution or other federal law

by Defendants.  Rather than citing a specific federal law that was violated, the Opposition only asserts nebulous statements such as Defendants "never provided any opportunity to respond to any of the allegations in the Order" and, thus, acted "improperly and capriciously."  Opp'n 15-16, ECF No. 17.  The Opposition is totally silent as to what legal authority vests a non-party such as EHS with a right to respond, or otherwise assert itself, into an administrative proceeding between a regulatory agency (DMHC) and its licensees (Health Plans).  In fact, the Opposition fails to cite a single authority holding that EHS is entitled to either notice or an opportunity to be heard as a non-party to Defendants' enforcement action.  That is because there is no such law.  Thus, there can be no continuing violation of a federal law mandating an "opportunity to respond," when such law does not exist.

### 2.   Plaintiff Fails to Show the Narrow Circumstances in Which the *Ex Parte Young* Exception Applies

First, Plaintiff is not challenging the constitutionality of enforcement of the Knox-Keene Act, which would apply to a wide-range of parties in various circumstances.  Rather, Plaintiff merely challenges the Order made pursuant to the Knox-Keene Act and directed to the Health Plans.  *See Coeur d'Alene*, 521 U.S. at 273-74 (recognizing that exercise of the federal court's jurisdiction may be warranted to avoid multiplicity of suits causing irreparable damage, or lack of proper opportunities for state review) (citations omitted).

Second, regarding the availability of a federal forum to interpret federal law, the exception is "tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights."  *Coeur d'Alene*, 521 U.S. at 277.  There is nothing unique in Plaintiff's Complaint that gives rise to a need to overcome the sovereign immunity allowed to the State under the Eleventh Amendment.  As the Supreme Court observed in *Coeur d'Alene*, "[t]o interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an

officer, named in an individual capacity, would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Id.* at 270.

Finally, it is well-recognized that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants." *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945).  While it is true that Plaintiff does bring claims for injunctive and declaratory relief and names the Director in her personal capacity, a review of the prayer for relief clearly shows that monetary relief in the form of damages against Defendants, including punitive and exemplary damages, is the primary focus of the Complaint.  Compl. 17, ECF No. 1.

## III.   THE DIRECTOR IS ENTITLED TO QUALIFIED IMMUNITY

The Director is entitled to qualified immunity from claims for monetary damages; therefore, plaintiff's sixth claim for relief fails.  Plaintiff cites to authority that supports Defendants' argument that Plaintiff's general allegations of its purported "clearly established" rights is insufficient to defeat the Director's qualified immunity.  The Opposition rehashes the Complaint's general and conclusory allegations that the Order "deprived Plaintiff of its property rights without any notice or opportunity to be heard" and violated its "rights secured by the Due Process Clause," such that it constituted "a violation of [the] Eighth Amendment's Excessive Fines Clause," and that "it is clearly established that race discrimination violates the 14th Amendment and federal civil rights laws such as Plaintiff's Section 1983 claim here."  Opp'n 23, 25, ECF No. 17.

Plaintiff mis-cites *Anderson v. Creighton,* 483 U.S. 635 (1987) (*Anderson)* as holding that "any action that violates the [Due Process] Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right."  Opp'n 23, ECF No. 17.  This is incorrect.  Plaintiff fails to quote

the remaining sentences, where the Supreme Court *rejected* the above quote and held: "But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*." *Anderson,* 483 U.S. at 639 (citing *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)).  The Court explained that permitting a standard as general as "any action that violates the Due Process Clause" would destroy qualified immunity:

> Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.  *Harlow* would be transformed from a guarantee of immunity into a rule of pleading.  Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages."

*Id.* (*citing Davis v. Scherer,* 468 U.S. 183, 195 (1984)).

The Supreme Court requires "*that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense*: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640 (emphasis added).  In *Anderson*, the Supreme Court rejected plaintiff's argument that qualified immunity was defeated "by little more than an assertion that a general right [defendant] was alleged to have violated – the right to be free from warrantless searches of one's home unless [there is probable cause or exigent circumstances] – was clearly established." *Id.* at 640.  Here, Plaintiff urges the Court to accept allegations that are nearly identical in generality, and therefore fail to overcome the Director's qualified immunity.  *See e.g*., Opp'n 23, ECF No. 17 (alleging violation of due process rights when the Director issued

the Order depriving Plaintiff's property rights without any notice or opportunity to respond).

### A. Plaintiff Fails to Address the Defects in Its Due Process Allegation to Support a Section 1983 Claim

The Opposition fails to address the defects raised in Defendants' Motion, namely that its general and conclusory allegation of due process violations by the Director is insufficient to overcome the Director's qualified immunity.  Plaintiff fails to cite, nor can it, to any authority providing IPAs with the "right" to be "heard" before DMHC can act against licensees.  There is neither a state nor federal statute, regulation, or case authority that provides for such a requirement.  It follows that (1) there is no "right" for a non-party IPA to be heard before the Director takes administrative action against licensees pursuant to the Knox-Keene Act, and (2) even if such a right can be inferred, it is not "clearly established" as required by the Supreme Court.  Thus, the Director is entitled to qualified immunity because she could not have violated a clearly established right when that right does not exist.

### B. Plaintiff Fails to Address the Defects in Its Race Discrimination Allegation to Support a Section 1983 Claim

The Opposition similarly fails to address the defects in its general and conclusory allegation that the Director racially discriminated against EHS based on "Plaintiff's shareholders' racial/ancestry status."  Opp'n 25, ECF No. 17.  Instead, Plaintiff reiterates its mantra that a broad legal concept is clearly established merely because it can be found in an Amendment to the Constitution.  *Id*. ("it is clearly established that race discrimination violates the [Fourteenth] Amendment and federal civil rights laws such as Plaintiff's Section 1983 claims here").  Plaintiff cites to *Brown v. Board of Education,* 347 U.S. 483 (1954), which is inapposite to an enforcement action by the Director based on whistleblower complaints.  Opp'n 25, ECF No. 17.  This is because nothing in the facts here involve the segregation of persons based on race.  Plaintiff offers no legal or factual support to address

1  Defendants' argument that IPAs are not a protected class and that Section 1983

2  does not permit a private right of action without an independent right.  Mot. 24-25,

3  ECF No. 13.

4        The Opposition contends that alleging a California Government Code

5  violation is sufficient to establish a Section 1983 claim.  However, Plaintiff's state

6  law discrimination claim under California Government Code section 11135 requires

7  Plaintiff to be in a protected class, which IPAs are not.  Opp'n 21, ECF No. 17.

8  The statute provides that "[n]o person" should be "unlawfully subject to

9  discrimination" on the basis of enumerated protected classifications.  Cal. Gov't

10  Code § 11135 (West 2018) ("sex, race, color, religion, ancestry, national origin,

11  ethnic group identification, age, mental disability, physical disability, medical

12  condition, genetic information, marital status, or sexual orientation").  In order to

13  establish a prima facie case under the statute, Plaintiff must show that "the

14  defendant's facially neutral practice causes a disproportionate adverse impact *on a*

15  *protected class*."  *Darensburg v. Metro. Transp. Comm'n,* 636 F.3d 511, 519 (9th

16  Cir. 2011) (emphasis added).  Plaintiff, a for-profit corporate entity, enjoys no

17  protection under that statute.  There are simply no facts alleged, nor does there

18  appear to be any facts which could be alleged, on which Plaintiff can base a

19  discrimination claim to override the Director's qualified immunity.

20        Plaintiff's Opposition fails to address the defects in its Section 1983 claim,

21  and for that reason, Plaintiff sixth claim for relief must be dismissed with prejudice.

22    **C.   Plaintiff's Attempt to Incorporate the Eighth Amendment into
             Its Section 1983 Argument Fails**

23

24        The Opposition appears to allege that the Eighth Amendment somehow

25  supplies the missing predicate to its Section 1983 argument.  This argument is of no

26  moment because the Complaint only alleged an Eighth Amendment violation

27  against DMHC, *not* the Director.  *Compare* Compl. ¶¶ 44-50, ECF No. 1 *with*

28  Opp'n 23, ECF No. 17.  Any attempt to bootstrap an Eighth Amendment violation

against the Director through its discussion of qualified immunity should be rejected. The proper manner in which to add a new claim for relief is through amendment of the Complaint.  Fed. R. Civ. P. 15.  Plaintiff's attempt to craft a private right of action against the Director through an Eighth Amendment violation fails because no such violation was ever previously asserted.

The Opposition fails to address its lack of a cognizable predicate action for its Section 1983 claim, and for that reason, the sixth claim for relief should be dismissed.

## IV.  PLAINTIFF FAILS TO OVERCOME THE MOOTNESS BAR TO ITS CLAIMS

The Opposition fails to refute Defendants' authority demonstrating mootness. Instead, Plaintiff cites inapposite cases where, unlike here, a favorable decision would return matters to the status quo because the Court had jurisdiction of the party who can grant the relief requested.

In *Garcia v. Lawn*, defendant-agency terminated plaintiff-employee after that employee refused to transfer from Los Angeles to Detroit, which was ordered in retaliation for the employee's exercise of his rights.  *Garcia v. Lawn*, 805 F.2d 1400 (9th Cir. 1986).  There, the court did not find the case moot because the court could issue "an order [directing defendant-agency to] reinstat[e] [plaintiff] to his prior position," which would provide plaintiff the very relief sought – "continuation of his employment with the agency."  *Id.* at 1403.  Plaintiff's other cited cases in the Opposition are in accord.

Here, the Court ordering Defendants to rescind the Order will not undo the Health Plans' terminations of their contracts with EHS and cause re-entry into new contracts with EHS.  Here, the Order only compelled the nine Health Plans to complete three tasks by February 1, 2018.  These tasks have all been completed. The Order, by its terms, does not prohibit any of the Health Plans from entering into new agreements with EHS at any time in the future.  In fact, the Order, by its terms, neither compels nor prohibits any further actions by any of the Health Plans

17

1  after February 1, 2018.  Plaintiff's contention is based on mere speculation about

2  what the many licensed health plans in California might or might not do.  Thus, its

3  claims are moot.

4  **V.  PLAINTIFF'S CONSTITUTIONAL CLAIMS FAIL**

5          **A.  Plaintiff Fails to State a Claim Under the Fifth Amendment**

6          The Opposition contends that the second claim for relief is viable because the

7  Fifth Amendment was incorporated by the Fourteenth Amendment to apply against

8  States.  This fails to refute Defendants' Motion, because the Fifth Amendment Due

9  Process Clause applies only against the federal government.  *Dusenbery v. United*

10  *States,* 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth

11  Amendment prohibits the United States, as the Due Process Clause of the

12  Fourteenth Amendment prohibits the States, from depriving any person of property

13  without 'due process of law.'").  The Complaint unequivocally alleges a Fifth

14  Amendment violation.  Compl. ¶¶ 40, 43, ECF No. 1 (The Order "violate[s]

15  Plaintiff's 5th . . . Amendment due process rights" and "Plaintiff seeks to recover

16  any and all damages against Defendant DMHC resulting for [*sic*] its violations

17  under the Due Process Clause[] of the Fifth Amendment[].").  Therefore,

18  Plaintiff's second claim for relief should be dismissed with prejudice.

19          **B.  Plaintiff Fails to State a Claim Under the Eighth Amendment**

20          The Opposition fails to refute Defendants' argument that the Eighth

21  Amendment's Excessive Fines Clause is inapplicable to the Order.  The Excessive

22  Fine Clause "limits the government's power to extract payments, whether in cash or

23  in kind, as *punishment* for some offense.  *Austin v. United States*, 509 U.S. 602,

24  609-10 (1993) (original emphasis) (quoting *Browning–Ferris Industries of Vt., Inc.*

25  *v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 (1993)).  "[A] civil sanction that cannot

26  fairly be said solely to serve a remedial purpose, but rather *can only be explained as*

27  *also serving either retributive or deterrent purposes, is punishment*."  *Id.* at 621

28

1  (emphasis added) (quoting *United States v. Halper,* 490 U.S. 435, 448 (1989)).

2  Since the Order was not punitive, the Excessive Fines Clause does not apply.

3       Here, the Order was issued to protect patients consistent with Defendants'

4  duties under the Knox-Keene Act.  Cal. Health & Safety Code § 1340 (West 2018).

5  The Act requires Defendants to safeguard health plan enrollees, including

6  especially vulnerable Medi-Cal patients.  *Id.*  Millions of patients were at risk of

7  being wrongfully denied medically necessary services.  *See* Compl. Ex. C, ECF No.

8  1-3.  Thus, the Order serves the remedial purpose of protecting millions of health

9  plan patients.

10  **1.    Neither the Ninth Circuit nor the Supreme Court Has
     Expressly Held that the Excessive Fines Clause Is**

11  **Incorporated Under the Due Process Clause of the
     Fourteenth Amendment**

12

13       Contrary to Plaintiff's assertion, the Excessive Fines Clause does not apply

14  against the States.  Plaintiff misreads *Enquist v. Oregon Department of Agriculture*,

15  478 F.3d 985 (9th Cir. 2007) (*Enquist*) when it states that "the Ninth Circuit has

16  consistently held that the Excessive Fines Clause definitely applies against the

17  states."  Opp'n 18, ECF No. 17.  In *Enquist*, the plaintiff's alleged injury was

18  related to her economic losses after she was laid off by a state agency and involved

19  a split remedy scheme under which part of a punitive damages award is apportioned

20  to a state crime victims fund.  *Enquist*, 478 F.3d. at 990-991, 1001-1002.  There, the

21  Ninth Circuit expressly stated that it was *not* deciding whether the Excessive Fines

22  Clause applies against the states, but instead stated that it would only assume that

23  the Excessive Fines Clause did apply against the states for the purpose of its

24  analysis in that case.  *Id.* at 1005, n.21 ("The Supreme Court has never expressly

25  held that the Excessive Fines Clause applies to the States.").  The Ninth Circuit

26  thought the Excessive Fines Clause might apply against a state if the state "had a

27  right to receive a share of the damages awarded."  *Id.* at 1005.  The Ninth Circuit

28  noted that a fine for the purposes of the Excessive Fines Clause means "a *payment*

1   *to a sovereign* for some offense." *Id. at p.* 1006 (emphasis added) (quoting *United*

2   *States v. Bajakajian*, 524 U.S. 321, 327-28 (1998).).  Without deciding whether the

3   Excessive Fines Clause applied against the State of Oregon, the Ninth Circuit

4   rejected the plaintiff's Excessive Fines Clause claim for relief on the basis that her

5   alleged economic losses from her employment termination did not constitute a fine

6   paid to the State as a punishment.  *Id.* at 1006.

7       *Enquist* supports Defendants' argument that the Eighth Amendment is

8   inapplicable here.  As Defendants pointed out in their Motion to Dismiss, Plaintiff's

9   alleged economic losses related to the termination of its contracts with the Health

10  Plans pursuant to the Order, are not fines paid to the State of California as a

11  punishment.  Mot. 19, ECF No. 13.

12      Plaintiff also misreads *Wright v. Riveland*, 219 F.3d 905 (9th Cir. 2000)

13  (*Wright*), when it states that "the Ninth Circuit has consistently held that the

14  Excessive Fines Clause definitely applies against the states."  Opp'n 18, ECF No.

15  17.  In *Wright*, the Ninth Circuit found that certain deductions made by the State of

16  Washington (for a victim's compensation fund and repayment of some of the costs

17  of incarceration) from the income accounts of a class of prisoners were subject to

18  the Eighth Amendment's Excessive Fines Clause and remanded the case for a

19  factual determination regarding whether or not the deductions were excessive.

20  *Wright,* 219 F.3d at 914-919.  In doing so, the Ninth Circuit did not consider

21  whether the Excessive Fines Clause is incorporated under the Due Process Clause

22  of the Fourteenth Amendment.  *Id*.  Unlike in *Wright,* and as noted above, the Order

23  is not payment paid by Plaintiff to the State, so the Eighth Amendment is not

24  implicated in any way and is totally inapplicable.  *Wright* was decided by the Ninth

25  Circuit in 2000.  Because the Supreme Court expressly held a decade later that it

26  has never decided the Excessive Fines Clause is incorporated under the Due

27  Process Clause of the Fourteenth Amendment, Plaintiff's reliance on *Wright* is

28  misplaced.  *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 765, n.13. (2010)

1   ("Only a handful of the Bill of Rights protections remain unincorporated" and "the

2   only rights not fully incorporated are (1) the Third Amendment's protection against

3   quartering of soldiers; (2) the Fifth Amendment's grand jury indictment

4   requirement; (3) the Seventh Amendment right to a jury trial in civil cases; and (4)

5   the Eighth Amendment's prohibition on excessive fines.").

6   ## 2.   Defendant's Order Is Not a Punishment

7   Plaintiff fails to support its argument that the Order is "an excessive

8   punishment in violation of the Eighth Amendment."  Opp'n 18, ECF No. 17.

9   Plaintiff appears to argue that an excessive fine is distinct from an excessive

10   punishment.  *Id* at 18.  However, the Supreme Court held that the Excessive Fines

11   Clause limits the federal government's ability to extract payments, whether in cash

12   or in kind, as a punishment for some offense.  *Austin v. United States*, 509 U.S. at

13   609-610.  There, the issue was whether the Excessive Fines Clause applied only in

14   criminal cases or also extended to an *in rem* civil forfeiture procedure, which

15   allowed the federal government to seize the property of persons convicted of certain

16   drug offenses.  *Id*. at 604-607.  The Supreme Court held that for the Excessive

17   Fines Clause to apply, the federal government must compel payment *to itself from a*

18   *person* or entity as punishment for some offense.  *Id.*

19   Here, the Order does not compel Plaintiff to make payments, whether in cash

20   or in kind, as punishment to Defendants.  Plaintiff's alleged damages are all

21   economic losses—none of which constitute payment to Defendants.  Thus,

22   Plaintiff's "excessive punishment" argument fails because Plaintiff was never

23   compelled to pay money to the State of California as a fine or a punishment.  *Austin*

24   *v. United States*, 509 U.S. at 607 ("[T]he Excessive Fines Clause was intended to

25   limit only those fines directly imposed by, and payable to, the government.").

26   Based on the foregoing, Plaintiff failed to address the defects in its Eighth

27   Amendment claim against DMHC, and the defect is incurable.  On this basis,

28   Plaintiff's third claim for relief should be dismissed with prejudice.

### C. **Plaintiff Fails to State a Claim Under the Fourteenth Amendment**

As discussed above, the Opposition fails to address the defective due process claim under the Fourteenth Amendment because no statute, regulation, or court decision provides for notice and an opportunity for an IPA to be heard prior to enforcement action taken by Defendants against its licensees pursuant to the Knox-Keene Act.  Therefore, there is no violation because there is no such right.  *See* Section III(A).

### VI. **PLAINTIFF'S SILENCE ON DEFENDANTS' EVIDENCE THAT EHS AND SYNERMED ARE ESSENTIALLY THE SAME ENTITY IS TANTAMOUNT TO AN ADMISSION**

Plaintiff makes the bold assertion that EHS and SynerMed are separate and distinct entities, but fails to provide any factual support for the contention and fails to refute the evidence attached in Exhibit B to the Lowrie Declaration.  EHS's Moy Declaration similarly declares the entities are separate without providing factual support for the contention.  The single item in EHS's Request for Judicial Notice shows the 2018 Secretary of State filing for EHS with a Pasadena location (notably filed well after the facts underlying this action became public).  Tellingly, however, EHS asserts no facts regarding when EHS moved locations, or addressing the nearly identical members of the board of directors for both entities when the Order was issued.  Silence in these circumstances is often construed by the courts as a tacit admission of the truthfulness of the statements.  *See, e.g., Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d at 1290 (finding no error in determination that silence in the face of contrary evidence can be accorded weight that the evidence was unrefuted); *Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d at 1161 (Court construes plaintiff's failure to oppose motion to dismiss Count II as an admission that the motion has merit); Fed. R. Evid. 801(d)(2) (admissions by party-opponent).  EHS's failure to provide any meaningful factual support or argument is tantamount to an admission that SynerMed and EHS are merely legal fictions for one another.

1    Plaintiff argues that SynerMed and EHS are distinct entities, contrary to the

2  evidence, to feed the theory that Defendants are "targeting" Plaintiff by directing

3  the Health Plans to terminate contracts with Plaintiff only, instead of other IPAs

4  that contract with SynerMed.  Opp'n 18-19, ECF No. 17.  As Defendants note in

5  their Motion, EHS dismissed its lawsuit against SynerMed as to the only two

6  named defendants, without ever serving the complaint.  RJN Ex. 3 at 14-19, ECF

7  No. 13-2.  EHS currently faces a hearing on sanctions for its failure to appear and

8  serve its lawsuit against SynerMed.  *Id.* at 14-16.

9                        **CONCLUSION**

10    Based upon the foregoing reasons, Defendants respectfully requests that this

11  Court grant the Motion to Dismiss with prejudice.

12

13  Dated:  May 17, 2018                      Respectfully submitted,

14                                            XAVIER BECERRA
                                              Attorney General of California
15                                            JENNIFER M. KIM
                                              Supervising Deputy Attorney General

16

17                                            */s/ Malinda Lee*
                                              MALINDA LEE
18                                            MARY R. CONKLIN
                                              Deputy Attorney General
19                                            *Attorneys for Defendants*

20  LA2018500516
    Final Reply Brief (with tables).docx
21

22

23

24

25

26

27

28

23

## CERTIFICATE OF SERVICE

Case Name: **Employee Health Systems**
**Medical Group, Inc. v.**
**Department of Managed Health**
**Care; et al.**

No.

2:18-CV-01166-GW(JPRx)

I hereby certify that on **May 17, 2018**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 17, 2018**, at Los Angeles, California.

|                       |                        |
| --------------------- | ---------------------- |
| Malinda Lee           | */s/ Malinda Lee*      |
| Declarant             | Signature              |

LA2018500516
reply pos.doc